UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00009-MOC

| | | |
|---|---|---|
| **PAUL OSUJI,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | MEMORANDUM OF DECISION |
| | ) | and |
| v. | ) | ORDER |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Paul Osuji filed a 28 U.S.C. § 2255 motion, contending that: (1) the attorney he initially retained to represent him at trial rendered ineffective assistance of counsel by failing to communicate a plea offer before it expired and failing to initiate plea discussions with the Government after being instructed to do so; (2) his appellate counsel was ineffective for failing to challenge venue of Petitioner's money laundering counts during his first appeal; (3) his appellate counsel was ineffective for failing to challenge Petitioner's money laundering convictions in light of United States v. Santos, 553 U.S. 507 (2008); (4) his appointed trial attorney provided ineffective assistance of counsel for failing to warn Petitioner that pleading guilty in his unrelated federal drug case would impact his criminal history category in the healthcare fraud case; (5) his appointed trial attorney was ineffective for failing to investigate the case and prepare for trial; and (6) his appointed trial attorney failed to argue during a hearing about the division in which the trial would be held. For the reasons that follow, the court denies Petitioner's motion and grants the Government's motion for summary judgment.

## I.      Factual and Procedural Background

Petitioner's case arose from his participation in a fraudulent scheme to obtain Medicare reimbursements for motorized wheelchairs. In 2009, a federal jury convicted Petitioner of one count of conspiracy to defraud a health care benefit program in violation of 18 U.S.C. §§ 1347 & 1349; nine counts of aiding and abetting health care fraud in violation of 18 U.S.C. §§ 2 & 1347; one count of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) & 1956(h); and seven counts of aiding and abetting money laundering in violation of 18 U.S.C. §§ 2 & 1956(a)(1)(A)(i). A review of the facts relevant to Petitioner's ineffective counsel claims follows.

On October 25, 2006, a federal grand jury sitting in Charlotte charged Petitioner and his co-defendant Tamara Varnado with conspiracy and health care fraud, in violation of 18 U.S.C. § 1347. Petitioner was released on bond following his first court appearance, and Attorney Deke Falls entered a limited appearance on behalf of Petitioner on December 8, 2006. On March 2, 2007, the U.S. Attorney's Office advised Attorney Falls of a plea offer that would expire on March 19, in anticipation of an April trial setting. Gov't Ex. 1. The agreement stipulated that Petitioner would plead guilty to Counts One (conspiracy) and Eight (health care fraud), in exchange for the Government's dismissal of the remaining counts. As part of the agreement, the parties would recommend that Petitioner's offense level be adjusted to 24, with the possibility for a two- or three- level reduction for acceptance of responsibility.

The offer lapsed, and the grand jury returned a superseding bill of indictment on May 3, 2007, charging Petitioner and Varnado with health care fraud conspiracy, in violation of 18 U.S.C. § 1349; health care fraud, in violation of § 1347; money laundering, in violation of §

1956(h); and numerous counts of promotion money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A).

On May 8, 2007, Attorney Falls filed a motion for inquiry of counsel and motion to withdraw as counsel, stating that, since being released on bond, Petitioner had failed to maintain contact with and retain counsel. See USA v. Osuji, 3:06CR415 (W.D.N.C.) (#31). Attorney Falls also stated in his motion that he had just learned from the supervising pre-trial officer that Petitioner had been arrested and detained on February 28, 2007, in the Southern District of New York for federal drug charges. Id. at ¶ 2. Attorney Falls stated that he had not spoken with Petitioner since January or early February and that neither Petitioner nor his attorney in the New York drug case ever contacted him to advise him of his client's arrest and detention. Id. at ¶¶ 2-3. The magistrate judge held an inquiry into counsel hearing on July 11, 2007, once Petitioner arrived back in this district. At the hearing, Attorney Falls was allowed to withdraw from the case, and the court then appointed Attorney Marshall Swann to represent Petitioner on July 13, 2007.

Five months later, on December 12, 2007, Petitioner wrote to Magistrate Judge Keesler asking for new counsel, alleging that Attorney Swann was not effectively defending him, that he failed to object to the transfer of the trial location from Charlotte to Asheville, and that he would not receive a fair trial in Asheville. The magistrate judge held a hearing on the matter but denied Petitioner's motion.

In January 2008, after a week-long trial, the jury convicted Petitioner of all counts. On May 16, 2008, Petitioner pleaded guilty to one count of using a communication facility in furtherance of a conspiracy to distribute cocaine in the New York federal drug case. Four months

later, on September 9, 2008, Petitioner was sentenced to 48 months of imprisonment for that conviction.

Petitioner was then transported back to North Carolina for his sentencing on the health care fraud case. The district court held the first sentencing hearing on November 20, 2008, and sentenced Petitioner to 211 months of imprisonment followed by three years of supervised release. Petitioner was assessed three criminal history points for the New York drug conviction.

Petitioner and Varnado appealed their convictions and sentences, challenging, *inter alia*, the sufficiency of the evidence, portions of the jury instructions, and several aspects of their sentences. Varnado additionally challenged venue on several of the money laundering counts, but Petitioner did not. See United States v. Osuji, 413 F. App'x 603, 611 (4th Cir. 2011). The Fourth Circuit affirmed in part, vacated in part, and remanded with instructions for resentencing. Id. at 614. Regarding the convictions, the court affirmed the health care fraud convictions in their entirety (Counts One through Ten), affirmed the money laundering conspiracy conviction as to both defendants (Count Eleven), affirmed all of the money laundering convictions as to Petitioner (Counts Twelve through Eighteen), affirmed two of the money laundering convictions as to Varnado (Counts Fourteen and Seventeen), and vacated several of Varnado's money laundering convictions (Counts Twelve, Thirteen, Fifteen, Sixteen, and Eighteen) as a result of the district court's failure to instruct the jury on venue. Id. at 608-12. In vacating some of Varnado's money laundering convictions, the Fourth Circuit found that the Government "showed that Varnado handled money in Texas but did not prove that Varnado *transferred* any funds relating to those counts," and, as such, the evidence was insufficient to support a finding of venue in the Western District of North Carolina. Id. at 612 (emphasis in original). As to the sentences, the court vacated both defendants' sentences because the Guideline ranges used at the

initial sentencing hearings were based on an incorrect base offense level. Id. at 613-14. The court remanded the cases for resentencing and did not reach the other sentencing issues raised by the defendants. Id.

Following remand from the Fourth Circuit, this court convened a re-sentencing hearing on October 11, 2011 and sentenced Petitioner to 120 months of imprisonment for the health care fraud conspiracy and the substantive health care fraud counts, and 121 months on the money laundering convictions, to be served concurrently. USA v. Osuji, 3:06CR415 (W.D.N.C.) (#302, 303). The calculation of Petitioner's criminal history score included three points for his New York drug conviction and sentence. See id. (#283-1) at ¶ 36.

Petitioner appealed from this sentence, challenging, for the first time, venue on the money laundering counts, and the enhancements for loss amount, his supervisory role, and abuse of a position of trust. In an unpublished opinion dated October 16, 2012, the Fourth Circuit rejected Petitioner's claims and affirmed his conviction and sentence. See United States v. Osuji, 495 F. App'x 333, 334 (4th Cir. 2012). As to his challenge to venue of the money laundering counts that were previously vacated in Varnado's case, the Fourth Circuit held that because Petitioner failed to raise this argument in his initial appeal, his present attempt to challenge those convictions were barred by the mandate rule. Id. (citing United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)). The Fourth Circuit also affirmed the district court's findings as to loss amount, role enhancement, and abuse of trust. Id. at 334-35. The court issued its mandate November 7, 2012, making the October 16, 2012, judgment effective that day. Petitioner placed his initial motion to vacate in the prison mail system on January 8, 2014, and amended his petition on April 8, 2014. Petitioner asserts that he received ineffective assistance of counsel on several grounds. The Government has moved for summary judgment.

**II.    Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure, provides:

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for a party to use in responding to a

Motion for Summary Judgment:

**(c) Procedures.**
    **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

{ "pageset": "Se2

        (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

        (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

    **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

    **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.

    **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of

production to show that there are no genuine issues for trial. Upon the moving party's meeting

that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586–87, (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Id. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnic, 600 F.2d 458 (4th Cir. 1979).

{ "pageset": "Se2 In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn

in his or her favor. <u>Anderson</u>, 477 U.S. at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 252.

## III.    Analysis of Petitioner's Ineffective Assistance of Counsel Claims

In order to prevail on his ineffective assistance of counsel claims, Petitioner must show for each claim that: (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced him. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id.</u> at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Id.</u> at 694. The petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297 (citation omitted). If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." <u>Id.</u> at 1290 (citing <u>Strickland</u>), 466 U.S. at 697.

## A. Ineffective Assistance of Trial Counsel Concerning Plea Agreements

*1. Alleged Ineffective Representation by Attorney Falls Regarding Plea Negotiations*

Petitioner first contends that he received ineffective assistance of counsel with respect to Attorney Richard Deke Falls, whom Petitioner initially retained for his health care fraud and conspiracy charges. The gravamen of Petitioner's complaint is that Attorney Falls did not inform Petitioner of the plea agreement that the Government offered in March 2007. Petitioner alleges

that because he was not informed of this offer and learned of it only after it had lapsed, he was convicted after trial with a more severe sentence. While non-communication of a plea offer is generally grounds for a finding of ineffective counsel, the circumstances of Petitioner's case merit further analysis.

The question presented to the court today is whether a defendant has received ineffective assistance of counsel when his attorney does not communicate a plea offer to such defendant, and where the defendant, who has been subsequently arrested and detained on unrelated federal charges, has failed to maintain contact with counsel or alert counsel of his arrest.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel at all critical stages of the proceedings, including plea negotiations. Lafler v. Cooper, 132 S. Ct. 1376 (2012); Missouri v. Frye, 132 S. Ct. 1399, 1386-87, 1407 (2012) ("plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages."). The general rule is that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1399. In Frye, the Court found that a defense attorney who allowed a plea offer to expire without advising his client of its existence or allowing him to consider it, and where the defendant subsequently pleaded guilty to more severe terms, failed to render effective assistance of counsel.

Both parties to this case agree that Attorney Falls did not communicate the Government's March 2007 plea offer to Petitioner before the offer lapsed. On its face, such a lack of

communication fails to meet the standard articulated in <u>Frye</u> for effective counsel in a plea negotiation. The Government urges the court to distinguish the case at hand from <u>Frye</u> by arguing that the "unique circumstances" surrounding Petitioner's whereabouts during the time the plea was offered—namely, his arrest and detainment in New York for federal drug charges—render the blame for this communication failure on the Petitioner himself, not his attorney. Petitioner, however, argues that Attorney Falls had a duty to report the Government's plea offer to him despite his subsequent arrest and detainment in New York and despite the fact that he never communicated his whereabouts to Attorney Falls. The court finds Petitioner's argument unpersuasive.

In assessing whether such a communication failure by Petitioner's attorney amounts to ineffective assistance of counsel in the context of a plea, the court applies the <u>Strickland</u> two-pronged test for performance and prejudice. <u>See</u> <u>Lafler</u>, 132 S. Ct. at 1384.  In considering performance, it is clear that Attorney Falls had a duty to communicate the plea offer to his client. In addition to the very clear mandate in <u>Frye</u>, the American Bar Association recommends that in the context of plea negotiations, defense counsel should "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney." ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(a) (3d ed. 1999).  As the Court in <u>Frye</u> recently advised, codified standards of professional practice, such as the ABA Standards, provide guidance in determining the standard for an attorney's performance.  <u>Frye</u>, 132 S. Ct. at 1408.  Thus, there is no doubt that defense counsel must communicate plea offers to clients.  The question remains, however, as to what lengths a defense attorney must go in order to effectuate such communication.

Here, as in <u>Frye</u>, defense counsel did not communicate the formal plea offer to the defendant and the offer subsequently lapsed.  However, Attorney Falls stated in his affidavit that

he tried to reach Petitioner, who was living in New York at the time, by both phone and mail in order to communicate the offer. Gov't Ex. 2 at 1. Attorney Falls contends that he did not know of his client's whereabouts, despite repeated attempts to ascertain them, until he received a phone call from the U.S. pretrial services office notifying him that Petitioner had been arrested on federal drug charges and was in custody in New York. Id. Attorney Falls contends that even though Petitioner had been in custody and represented by appointed counsel for some time, neither of them attempted to contact him to inform him of the new charges. Id. Petitioner claims that Attorney Falls "could have checked with [his] pre-release supervising officer" about Petitioner's location, but Petitioner incorrectly places the burden of communicating with Attorney Falls on his supervising officer instead of himself or his attorney in New York. Pet. Decl. at 2. Where an attorney tries repeatedly to reach his client, but is unable to because the client has, to all appearances, disappeared, the court finds that his conduct in attempting to make contact is reasonable.

Petitioner's claim also fails the prejudice prong of the Strickland analysis because he cannot show a reasonable probability that the outcome of his case would have been different had Attorney Falls communicated the Government's plea offer to him. In considering prejudice, the court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993)). Here, the result was not fundamentally unfair or unreliable because Petitioner, while out on bond for his federal health care fraud offense, was arrested and charged with federal drug trafficking. He cannot show that

the Government would have extended the same 36-month plea offer once it learned of this subsequent arrest, or once it superseded the bill of indictment to add new charges, including a new conspiracy charge that carried a higher statutory maximum.

The unlikelihood that the Government would have maintained its plea offer in light of Petitioner's subsequent arrest on separate federal charges is underscored in light of the standard set forth in Lafler, which provides that a court must consider whether there is a

> reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea *and the prosecution would not have withdrawn it in light of intervening circumstances*), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S. Ct. at 1385 (emphasis added). The Lafler factors in this case weigh in favor of the Government. Given Petitioner's arrest for federal drug charges following the plea offer, the Government almost certainly would have withdrawn its offer in light of the intervening circumstances. The plain language of the Government's March 2007 plea agreement states: "The defendant understands that if he breaches this Plea Agreement, or violates any federal, state or local law, or any order of any court…the United States will be relieved of its obligations under this Plea Agreement." Gov't Ex. 1 at 9. Here, Petitioner was arrested for breaking a federal law three days before the Government communicated the plea offer to Petitioner's attorney. He was thereafter in federal custody. As such, Petitioner would not have been able to comply with the terms of the plea even if Attorney Falls had made him aware of its existence.

Although Petitioner now claims that he was willing to accept a plea offer (Pet. Mot. at 32), his subsequent arrest rendered that option essentially impossible. Thus, his claim that Attorney Falls rendered ineffective assistance of counsel by failing to communicate the plea offer to him while he was (unbeknownst to his attorney) in federal custody fails.

*2. Alleged Ineffective Representation by Attorney Swann Regarding Plea Negotiations*

Petitioner also faults Attorney Swann for not initiating plea discussions with the Government once he was appointed to represent Petitioner. By the time Attorney Swann assumed representation, the Government's original offer had long since lapsed. Petitioner claims, however, that once Attorney Swann was appointed in July 2007, he had a duty to seek a plea agreement for Petitioner. Generally, there is no constitutional right to a plea agreement; the decision to initiate plea negotiations is a strategic decision to be made by defense counsel. United States v. Pender, 514 F. App'x 359, 361 (4th Cir. 2013) (citing Weatherford v. Bursey, 429 U.S. 545, 561 (1977)). An attorney is, however, required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. Pender, 514 F. App'x at 361. Petitioner has not offered any evidence showing that Attorney Swann had no reasoned strategy behind his decision not to pursue a plea bargain. See id. Attorney Swann submitted a sworn affidavit asserting that Petitioner "at no time requested or otherwise asked me to pursue plea negotiations, nor did he remotely suggest to me that he was interested in pursuing any plea offers." Gov't Ex. 3. Attorney Swann further asserts that he reviewed the letters Petitioner sent him as well as the notes that he took throughout the course of his representation and that nothing indicated that Petitioner asked him to pursue plea negotiations. Id.

In United States v. Pender, the Fourth Circuit considered an ineffective counsel claim brought by a defendant whose attorney had neglected to initiate plea negotiations even though the evidence against the defendant was quite strong and he faced a mandatory life sentence if convicted. Pender, 514 F. App'x at 360. In its decision to remand, the Fourth Circuit pointed out that the Government submitted no affidavits from defense counsel explaining his trial strategy or his decision not to pursue plea negotiations and that, without such a statement, no evidence

existed that counsel acted reasonably or strategically in his representation. Unlike in <u>Pender</u>, the record here includes an affidavit from Petitioner's trial counsel. Although Attorney Swann's statement does not explain his precise trial strategy, it does explain his research related to the case, the witnesses that he interviewed in preparation for trial, and a statement that he felt adequately prepared to defend Petitioner at trial. Attorney Swann explains that he did not pursue plea negotiations because Petitioner never asked him to. While a prepared criminal defense attorney, in his professional judgment, could have sought a plea bargain, he is not required to do so if he prefers to go to trial. <u>See</u> <u>Pender</u>, 514 F. App'x at 361. Such is the situation here. Attorney Swann's affidavit provided a sufficient explanation of his work in preparation for Petitioner's trial to show that he acted reasonably in the scope of representing Petitioner. Petitioner's claim that Attorney Swann provided ineffective assistance based on his failure to initiate plea negotiations therefore fails.

**B. Ineffective Assistance of Appellate Counsel Concerning Venue Challenge**

Petitioner next asserts that his appellate counsel, Attorney Matthew Robinson, was ineffective for failing to challenge venue of the money laundering counts during Petitioner's first appeal. Petitioner correctly points out that his co-defendant Varnado successfully challenged venue in these counts during her appeal, and he correctly points out that his failure to raise the issue in his first appeal prevented him from raising it in his second appeal. Petitioner has not, however, met the heavy burden of demonstrating ineffective assistance by his appellate counsel.

An appellate attorney is entitled to a presumption that he decided which issues were most likely to afford relief on appeal. <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993). Although it is possible to bring a <u>Strickland</u> claim based on counsel's failure to raise a particular claim on direct appeal, Petitioner has a high burden to meet in showing that counsel was

incompetent. <u>Brown v. Polk</u>, 135 F. App'x 618, 628 (4th Cir. 2005). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" <u>Smith v. Robbins</u>, 528 U.S. 259, 288, (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)).

Here, there was no ineffective assistance in the failure to challenge venue of the money laundering counts since Petitioner has neither demonstrated that such a challenge would have been successful, nor shown a reasonable probability that the outcome of the proceedings would have been different had counsel made such a venue challenge. Petitioner correctly points out that the Fourth Circuit vacated several of Varnado's money laundering convictions on venue grounds.   In doing so, however, the Fourth Circuit emphasized that the evidence "showed that Varnado handled money in Texas but did not prove that Varnado *transferred* any funds relating to those counts," and, as such, the evidence was insufficient to support a finding of venue in the Western District of North Carolina as to her. <u>United States v. Osuji</u>, 413 F. App'x 603, 612 (4th Cir. 2011) (emphasis in original). The court further explained that "evidence of handling money only in Texas alone is insufficient to support a finding of venue in the Western District of North Carolina." <u>Id.</u>  Petitioner, on the other hand, handled money in this district and transferred that money, or directed his secretary to, from Charlotte (where his business was located) to Varnado's business in Texas, making the venue evidence materially different, and much stronger, as to him. As the Fourth Circuit noted in Petitioner's first appeal,

> Count fourteen alleges a wire transfer from Osuji to Medisource [Varnado's Texas company] 'as payment towards Defendants' profit sharing agreement.' Count seventeen alleges that Osuji purchased a Cashiers check made payable to Medisource as payment toward Defendants' profit sharing agreement. Regarding these counts, the evidence offered at trial supports a finding of venue in the Western District of North Carolina.

Id. at 611. In light of the evidence that Petitioner transferred money from this district to Texas, it is unlikely that Petitioner would have prevailed, as Varnado did, in challenging venue. For this reason, he cannot overcome the heavy presumption that Attorney Robinson properly decided which issues were most likely to afford relief on appeal.

Moreover, Petitioner cannot demonstrate that he suffered any prejudice as a result of Attorney Robinson's failure to raise venue, because, as the Government points out, his sentence would have been the same even if those convictions were vacated. Petitioner still would have been convicted of the money laundering conspiracy and Counts 14 and 17 alleging substantive money laundering offenses. The vacatur of five other money laundering convictions would not have made his sentence any lower, and, conversely, the inclusion of these counts in the calculation of his sentence did not increase the sentence he ultimately received. Because Petitioner has not demonstrated deficient performance or prejudice, his claim against his appellate counsel fails.

## C. Ineffective Assistance of Appellate Counsel Regarding Money Laundering Counts

Petitioner also argues that Attorney Robinson was ineffective for failing to challenge the money laundering convictions in light of United States v. Santos, 553 U.S. 507 (2008). In Santos, the Supreme Court held that "proceeds" in the money laundering statute means "net profits" for certain crimes to avoid a merger problem. Petitioner contends that the monetary transactions which served as the basis for his money laundering conviction did not qualify as criminal conduct and that Attorney Robinson's failure to argue as much constitutes ineffective assistance of counsel.

Petitioner's argument, however, is incorrect under United States v. Halstead, 634 F.3d 270, (4th Cir. 2011), in which the Fourth Circuit applied Santos in a health care fraud context. In

Halstead, the Fourth Circuit held that Santos does not warrant relief "where the laundering of proceeds from the healthcare fraud involved transactions distinct from and subsequent to the transactions involved in the healthcare fraud itself." Halstead, 634 F.3d at 271. That is exactly what happened in Petitioner's case.

In Halstead, the defendant obtained proceeds from Medicare based on fraudulent representations. Once he received those funds from Medicare, his crime of health care fraud was complete. Id. at 280 ("At the moment that the healthcare provider paid money to Priority One, the crime of healthcare fraud was complete, and the money that the healthcare provider paid to Priority One was the "proceeds" of the healthcare fraud."). After the fraudulent transactions were completed, Halstead's subsequent transfers of money to other accounts constituted the bases of the money laundering counts. Such is the scheme that Petitioner undertook.

Petitioner, like Halstead, obtained proceeds from Medicare based on fraudulent representations. Once he received those funds from Medicare, his crime of health care fraud was complete. Petitioner, or his secretary, acting at his direction, then transferred large portions of those funds to his co-conspirators in Texas. Those transfers of money and the use of those funds to buy essential expenses for the fraud formed the bases of the money laundering counts. Thus, in Petitioner's case, as in Halstead, "the healthcare fraud charges were defined by the obtaining of money from the fraudulent billing of healthcare providers, while the money laundering charge was defined by transferring the proceeds thereafter." Id. at 280-81. A Santos merger problem is therefore not at issue here because Petitioner's crime of health care fraud was complete before he committed any money laundering. Petitioner's claims that his attorneys were ineffective for failing to challenge his money laundering convictions in light of Santos accordingly fails.

**D. Ineffective Assistance of Trial Counsel Regarding Pleading Guilty in an Unrelated Federal Case**

17

Petitioner also contends that his appointed trial attorney provided ineffective assistance of counsel for misadvising Petitioner and failing to warn him that pleading guilty in his unrelated federal drug case would impact his criminal history category in the health care fraud case. These two cases, Petitioner argues, "were used in concert to orchestrate a higher criminal history category against the Petitioner." Pet. Mot. at 42. Petitioner alleges that Attorney Swann and the attorney representing him in his New York drug case advised him "to forego the sentencing in [the health care fraud] case and rush back to New York and plead out to a Bill of Information, be found guilty and sentenced first on that case." Id. at 43. Petitioner further contends that his New York conviction could not be used to enhance his federal sentence in his North Carolina fraud case because he was found guilty in the fraud case before he admitted his guilt in the drug case. Id. at 43-44. He contends that the "date of the verdict or plea is the reference point." (Id. at 43) and that "the two verdicts cannot be used simultaneously in both cases" to increase his respective sentencings. Id.

As the Government points out, however, Petitioner has not provided any evidence to substantiate any of these claims, let alone point the court to any facts showing that his attorneys performed deficiently in a way that prejudiced his case. First, he has not provided any evidence that either of his attorneys advised him to "rush back" to New York to enter a guilty plea and be sentenced on that case. Second, he has not provided any evidence that the U.S. Attorney's Offices of either district worked "in concert" to "orchestrate" a higher criminal history score for him. Nor has he offered any evidence that his sentencing in this court was delayed to allow for the New York sentencing to occur first. To the contrary, it appears that the sentencing in this court was held up as the parties awaited the draft PSR (issued 7/8/08) and the final PSR (issued 10/1/08). The draft PSR was issued after his guilty plea in the New York case, and, pursuant to

U.S.S.G. § 4A1.2(a)(4), that conviction alone, even if he had not been sentenced, would have scored the same three points that were assessed following his sentencing.

The United States Sentencing Guidelines provides for the imposition of three criminal history points for "each prior sentence of imprisonment exceeding one year and one month." U.S. SENTENCING GUIDELINES MANUAL § 4A1.1(a). A "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." Id. § 4A1.2(a)(1). Further, "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) [adding 1 point for each prior sentence not counted under § 4A1.1(a)] if a sentence resulting from that conviction otherwise would be countable." Id. § 4A1.2(a)(4). Within the subsection, "convicted of an offense" means that "the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*." Id.

As to Petitioner's claim that his criminal history points should have been assessed in order of verdict, the court notes that under the sentencing guidelines, the term 'prior sentence' is "not directed at the chronology of the conduct, but the chronology of the sentencing." United States v. Lopez, 349 F.3d 39, 41 (2d Cir. 2003) (quoting United States v. Espinal, 981 F.2d 664, 668 (2d Cir. 1992)). Moreover, Section 4A1 "'make[s] no exception for a prior sentence imposed for a crime that took place after the crime currently before the sentencing judge.'" Id. (quoting United States v. Flowers, 995 F.2d 315, 317 (1st Cir.1993). Here, the chronology of guilty verdicts and sentencings in Petitioner's case is as follows: January 15, 2008, North Carolina guilty verdict for fraud case; May 16, 2008, New York drug case guilty plea; September 9, 2008, sentence imposed for New York drug case; November 20, 2008 and October 11, 2011, sentences

imposed in North Carolina fraud case. Here, the timing of Petitioner's convictions and sentencings properly resulted in three points being calculated and applied to Petitioner's criminal history score. This outcome is entirely consistent with the introductory commentary to Guidelines' provisions on criminal history:

> A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered.

U.S. SENTENCING GUIDELINES MANUAL ch. 4, pt. A, introductory cmt. Here, applying three criminal history points in light of Petitioner's guilty plea in his New York drug case was entirely consistent and appropriate with the sentencing guidelines.

In addressing Petitioner's claims of ineffective counsel regarding his criminal history points, Petitioner has neither shown the court that Attorney Swann's performance on this aspect of the case was in any way deficient, nor shown that any such action prejudiced the outcome of his case. Accordingly, his ineffective counsel claim on this point fails.

**E. Ineffective Assistance of Trial Counsel on the Basis of Failure to Investigate or Prepare for Trial**

Petitioner generally alleges that Attorney Swann failed to investigate his case, prepare for trial, or properly advocate on his behalf. His primary concern appears to be that Attorney Swann did not communicate with him enough throughout the course of trial. Petitioner states in his brief that "Counsel Swann made no effort to communicate with Petitioner concerning this case until he appeared for a very brief visit" in October—three months after he had been appointed to represent Petitioner. Pet. Mot. at 48. Petitioner contends that he did not see Attorney Swann again until they both appeared in court for the hearing regarding where in the Western District of

North Carolina to try the case. <u>Id.</u> Petitioner further states that "[n]ot once during the entire course of his involvement in this case did Counsel Swann interview Petitioner concerning this criminal offense." Pet. Mot. at 51.

Attorney Swann's affidavit, on the other hand, states that his records indicate personally meeting with and interviewing Petitioner on at least nineteen occasions. Gov't Ex. 3 at 2. He also explains that they discussed witnesses, Petitioner's business operations, and his relationships with other parties to the case. <u>Id.</u> at 1-2. Viewing this dispute over the number of times that Petitioner met with Attorney Swann before trial in the light most favorable to Petitioner, the court finds that no genuine issue of material fact exists. While this is indeed a factual dispute, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Regardless of how many times Petitioner and his attorney met before trial, Petitioner has not shown that Attorney Swann's level of knowledge about his case or his actions at trial ultimately prejudiced the outcome of Petitioner's case.

Petitioner also cited a portion of his trial transcript in his motion in an effort to show the court that Attorney Swann was unprepared at trial. After a careful review of that portion of the transcript, it appears that during trial, Attorney Swann alerted the court that he had not yet had a chance to go through the voluminous documents pertaining to trial witnesses that the Government had sent him several days prior. Though Petitioner claims that Attorney Swann's statements show his failure to prepare for trial, a further reading of the transcript shows that Attorney Swann in fact received a favorable ruling from the court on the matter. Attorney Swann properly alerted the court that he was a one-man legal operation and had not yet had time to review the extensive documents that the Government had delivered to him. As a result, the court

instructed the Government to direct Attorney Swann's attention to the exact witness documents that merited his immediate attention. Thus, by bringing attention to the reason he had not yet reviewed the documents, Attorney Swann effectively ensured that he was able to prepare for trial.

In short, Petitioner makes broad, vague allegations about Attorney Swann's preparation and investigation. He has not identified what Attorney Swann could have done to better handle Petitioner's case at trial other than to claim that Attorney Swann did not meet with him often enough and to claim that Attorney Swann should have initiated plea discussions, discussed *supra*. Petitioner cannot succeed on a § 2255 motion by simply making vague allegations that his attorney should have done more.

Moreover, the Fourth Circuit already noted in its review of Petitioner's motion to substitute counsel at trial and the trial transcript:

> regarding whether the conflict between [Petitioner] and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense, the record … shows that [Petitioner's] counsel cross-examined every government witness, argued numerous objections and motions, and conducted an appropriate direct examination of [Petitioner] when he testified in his own defense.

United States v. Osuji, 413 F. App'x 603, 607 (4th Cir. 2011). Such actions could not be attributed to an attorney who was unprepared for trial. There is simply no evidence that Attorney Swann's investigation of the facts, preparation for trial, or advocacy for his client fell below the range of competence demanded of criminal defense attorneys or prejudiced the outcome of Petitioner's case in any way. Therefore, Petitioner's ineffective assistance claim against Attorney Swann must fail.

## F. Ineffective Assistance of Trial Counsel Regarding Trial Location

Finally, Petitioner contends that his appointed trial attorney failed to argue during a hearing about the division in which the trial would be held, and that such actions constitute ineffective assistance of counsel. Petitioner here reiterates his frustration about being tried in the Asheville division, rather than the Charlotte division, of the Western District of North Carolina. While a defendant has a constitutional right to be tried in the district where the crime was committed, there is no constitutional right to a trial within a particular division of that district. See, e.g., United States v. Florence, 456 F.2d 46, 49 (4th Cir. 1972). Though Petitioner preferred that his trial be held in Charlotte, a review of the transcript of that hearing makes clear that trying this matter in Asheville rather than Charlotte was a matter of courtroom space. See USA v. Osuji, 3:06CR415 (W.D.N.C.) (#272) at 14. Moreover, Attorney Swann did, in fact, express to the court Petitioner's preference that he be tried in Charlotte at that hearing. Id. at 19. Thus, while both Petitioner and his attorney would have preferred the case to be tried in Charlotte, Petitioner's claims on the matter simply do not meet the high burden for a finding of ineffective assistance of counsel.

### IV.       Conclusion

In a § 2255 proceeding, courts are to grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing § 2255 Proceedings clarifies that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." An evidentiary hearing is required "when a movant presents a colorable Sixth Amendment claim showing disputed facts

beyond the record or when a credibility determination is necessary in order to resolve the issue."

United States v. Pender, 514 F. App'x 359, 360 (4th Cir. 2013).

The court finds no basis for relief of Petitioner's claims in this case and therefore finds that an evidentiary hearing is not required. There are no disputed facts of consequence to Petitioner's § 2255 claim that merit resolution, nor are any credibility issues at stake. Further, the court finds no genuine dispute as to any material fact and that the Government is entitled to judgment as a matter of law.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's 28 U.S.C. § 2255 motion (#1) (inclusive of his amended motion (#5)) is **DENIED**, and the Government's Motion for Summary Judgment (#10) is **GRANTED**.

Signed: September 29, 2014

Max O. Cogburn Jr.
United States District Judge